**AMERICAN ANTHRACITE AND BITUMINOUS COAL CORPORATION**

v.

**AMEROCEAN S. S. CO., Inc. and Amersea Navigation Corp.**

No. 35 of 1955, Admiralty.

United States District Court
E. D. Pennsylvania.
Feb. 14, 1955.

Conlen, LaBrum & Beechwood, Philadelphia, Pa., Hays, St. John, Abramson & Schulman, New York City, for libellant.

Krusen, Evans, & Shaw, Philadelphia, Pa., Julius Wilk, New York City, for respondents.

GANEY, District Judge.

This matter concerns itself with the motion to dismiss by the respondents with an answer thereto by the libellant. With respect thereto the court makes the following .

### Findings of Facts.

1. Libellant, American Anthracite and Bituminous Coal Corporation, is a corporation existing under the laws of the State of New York, whose principal office is at 11 West 44th Street, New York.

2. The respondents herein are Amerocean S. S. Co., Inc., a New York corporation whose place of business is 149 Broadway, New York, and its wholly owned subsidiary, Amersea Navigation Corp., a Liberian corporation whose place of business is the office of Amerocean S. S. Co., Inc., Broadway, New York.

3. The respondent, Amerocean S. S. Co., Inc., owns all of the capital stock of Amersea Navigation Corp. The corporate officers of Amersea Navigation Corp. are the same as those of Amerocean S. S. Co., Inc.

4. The Amersea Navigation Corp. was formed by the Amerocean S. S. Co., Inc. in order to place the S.S. Amersea, a vessel of American registry owned by Amerocean S. S. Co., Inc., under the Liberian flag by reason of the fact that it was more economical to operate the same under Liberian registry.

5. The bill of sale of the S.S. Amersea from Amerocean S. S. Co., Inc. to Amersea Navigation. Corp. was dated December 3, 1954.

6. On December 24, 1954 Alfred Devereaux, a partner of Walter A. DeLappe Co., New York, brokers for chartering vessels, acted as agent for the libellant in charter negotiations with Samuel H. Wang who was president of both Amersea Navigation Corp. and Amerocean S. S. Co., Inc.

7. During the course of these negotiations Samuel H. Wang disclosed to Alfred Devereaux the ownership of the S.S. Amersea and advised him that the Amersea was owned by Amersea Navigation Corp. of Liberia.

8. As a result of these negotiations, Alfred Devereaux caused to be drawn up in his office a proposed charter party between Amersea Navigation Corp. of Liberia, owner of the American S.S. Amersea or Liberty Substitute and American Anthracite and Bituminous Coal Corporation, which draft was mailed to and received by Samuel H. Wang, Amerocean S. S. Co., Inc. at his office, 149 Broadway, New York City.

9. Before the draft of the proposed charter party was completed, Alfred Devereaux was aware of the fact that the S.S. Amersea was owned by the Amersea Navigation Corp. of Liberia, by reason of the fact that "Amersea Navigation Corp. of Liberia" was inserted into the proposed charter party by the agent of the libellant, Walter A. DeLappe Co.

10. An action, the basis for which is the same as in the one before us, was brought by the libellant against Amerocean S. S. Co., Inc. in the United States District Court for the Southern District of New York on the twenty-fourth day of January, 1955. Attached to the New York pleading is a photostatic copy of a carbon copy of the charter party offered in evidence in the instant case as R–7.

11. Amerocean S. S. Co., Inc. and Amersea Navigation Corp. of Liberia are separate and distinct corporate entities, and Amerocean S. S. Co., Inc. acts as agent for Amersea Navigation Corp. in the operation of the S.S. Amersea.

12. The libellant had full knowledge of the fact that the S.S. Amersea was owned by the Amersea Navigation Corp. of Liberia prior to the time of the filing of the libel in the instant case.

13. There is no evidence of fraud, deceit or other misuse of the corporate structure here as between Amerocean S. S. Co., Inc. and Amersea Navigation Corp. of Liberia.

14. There is no evidence that the creation of Amersea Navigation Corp. as a wholly owned subsidiary of Amerocean

S. S. Co., Inc. was for other than a legitimate business purpose.

15. It is customary in the arrangement for charter parties for agents of vessel owners who are prospective parties, to refer to themselves as though they were the owner of the vessel.

16. Walter A. DeLappe Co. was not misled into believing that Amerocean S. S. Co., Inc. was the owner of the S.S. Amersea by the subsequent correspondence that ensued between it and Amerocean S. S. Co., Inc.

17. The S.S. Amersea was seized in this district by the United States Marshal under a Writ of Foreign Attachment issued by libellant. The vessel is being held here under that writ.

18. The respondent, Amerocean S. S. Co., Inc., appeared and filed a motion to dissolve the writ on the ground that the vessel was owned, not by it, but by the Amersea Navigation Corp.

19. At the close of the hearing on the motion to dissolve the Writ of Attachment an amended libel with a clause for foreign attachment was filed joining the Amersea Navigation Corp. as an additional respondent. Counsel for that corporation accepted service and filed an appearance. The additional respondent joined in the motion to dissolve the attachment.

### Conclusions of Law.

1. In the absence of fraud, illegality or wrongdoing by the respondent herein, Amerocean S. S. Co., Inc., and in the light of knowledge of the libellant, American Anthracite and Bituminous Coal Corporation, that the owner of the S.S. Amersea was the Amersea Navigation Corp. of Liberia, the court will not disregard the corporate entity of the Amersea Navigation Corp. of Liberia.

2. The attachment of the vessel S.S. Amersea under the writ was improper.

### Discussion.

This is a motion to vacate a writ of foreign attachment and to dismiss the libel on the ground that the respondent, Amerocean S. S. Co., Inc., named as the owner of the ship against which the writ issued was not the owner of the ship, and that the real owner was Amersea Navigation Corp. of Liberia.

The S.S. Amersea was sold to the Amersea Navigation Corp. of Liberia under bill of sale of December 3, 1954, and there is no evidence in the case to show anything of a fraudulent or illegal transfer, although the officers and directors of the Amerocean S. S. Co., Inc. were the same as those of the Amersea Navigation Corp. of Liberia. The reason for the transfer, the record discloses, was the more economical operation under the Liberian flag, and is a practice resorted to in the shipping industry by many companies and is not to be considered an uncommon practice.

The cause of action is brought on an alleged oral contract, the terms of which were supplied by Samuel H. Wang of the Amerocean S. S. Co., Inc. and Alfred Devereaux of Walter A. DeLappe Co., agent for the libellant, American Anthracite and Bituminous Coal Corporation. While the oral contract of the parties is the basis of the action, the best evidence of what that oral contract was is to be found in the proposed draft of the charter party prepared by Alfred Devereaux of Walter A. DeLappe Co., the agent for libellant. Alfred Devereaux testified that he had never heard of the Amersea Navigation Corp. of Liberia and that he mailed out the proposed draft of the charter party to Samuel H. Wang, leaving vacant the name of the owner of the vessel involved. The contention of Samuel H. Wang is that he told Devereaux, in the course of telephone conversations leading up to the negotiation of the charter, that the owner was the Amersea Navigation Corp. of Liberia. The draft of the proposed charter was retained from the time of its receipt some time during the first week of January by the respondent until its production in court on the twenty-ninth of January, 1955.

However, the respondent called a typewriter expert who testified that the words "Amersea Navigation Corp. of Liberia" were inserted in the proposed charter party draft by the same typewriter which wrote the body of the proposed draft; that certain telltale letters such as "s" in the phrase "Amersea Navigation Corp. of Liberia" and "s" in the word "substitute" in the phrase "Amersea or Liberty Substitute" show on the lower part of the "s" a battered condition which indicates that the same typewriter was used in making the whole body of the proposed draft. Additionally, the "t" in "Navigation" in the phrase "Amersea Navigation Corp. of Liberia" and the "t" used in the word "substitute" in the phrase "Amersea or Liberty Substitute" are likewise indicative that the same typewriter was used. On the reverse side of the charter there is indicated that the upper portions of the "t" bite much more distinctly into the paper than the other portions of it, and thus again indicative that the same typewriter was used.

Accordingly, on this testimony which is objective and which was not contradicted by any other experts, it is the opinion of the court that the words "Amersea Navigation Corp. of Liberia" were in the proposed draft when mailed out of the office of the Walter A. DeLappe Co. on December 31, 1954, and that, accordingly, the libellant, American Anthracite and Bituminous Coal Corporation, had knowledge through its agent that Amersea Navigation Corp. of Liberia was the owner of the vessel.

This is further buttressed by the fact that in an identical action in a New York Court the libellant attached to their pleadings a photostatic copy of a carbon copy of the proposed charter which is identical with the proposed charter offered in evidence in this case and marked R–7, with the exception that in that case the photostatic copy of the carbon copy does not include the words "Amersea Navigation Corp. of Liberia" as owner, but as indicated, in other respects it is identical.

However, the main witness for the libellant, Alfred Devereaux, testified that when the proposed charter left his office on December 31, 1954 the phrase "Amersea Navigation Corp. of Liberia" was not in the proposed charter, nor was the phrase "See Clause No. 34," which is in the original proposed charter party agreement and marked R–7. It is therefore, impossible to reconcile the averments in the New York pleadings as well as the proposed charter party offered here as R–7 with the testimony of the handwriting expert that the phrase "See Clause No. 34" was part and parcel of the whole proposed charter party, as well as with the testimony of the libellant's witness, Miss Cavell, who is the secretary, who testified that only "Amersea Navigation Corp. of Liberia" was not in the original party draft when it left her office. The court, accordingly, clearly comes to the conclusion that the libellant had knowledge of the ownership of the S.S. Amersea and that its ownership was in the Amersea Navigation Corp. of Liberia.

Therefore, having knowledge that the ownership of the Amersea was in the "Amersea Navigation Corp. of Liberia", our next question is whether the record discloses anything which would cause the libellant, American Anthracite and Bituminous Coal Corporation, to be misled to thinking that Amerocean S. S. Co., Inc. was the owner of the vessel Amersea. There was evidence that a business report of Dun & Bradstreet showed that there was acknowledgment by Amerocean S. S. Co., Inc. of its ownership of the Amersea, but this report of Dun & Bradstreet is dated before the libellant named Amersea Navigation Corp. of Liberia as owner in the proposed draft of the charter party, and since they expressly knew the ownership of the Amersea by their insertion in the charter party it is difficult to see how anything earlier said by Dun & Bradstreet would mislead the libellant.

Additionally relied upon is a series of letters, two dated January 7, 1955 and one dated January 14, 1955 in which correspondence ensues with respect to the charter party between the officers of the Amerocean S. S. Co., Inc. and the agent of the libellant, Walter A. DeLappe Co. In view of the express finding that the libellant had knowledge of the ownership of the Amersea being in Amersea Navigation Corp. of Liberia, it seems to the court that there is nothing in the correspondence which would exceed the bounds of the agent, that is the Amerocean S. S. Co., Inc. as one agent for its wholly owned subsidiary, Amersea Navigation Corp. of Liberia, and certainly it is not strong enough to contradict the knowledge that they had as of December 31, 1954 that Amersea Navigation Corp. of Liberia was the owner of the Amersea.

It is not always easy to differentiate when one corporation is the alter ego of the other, where one corporation controls by stock ownership and by corporate officers another corporation.

■■ However, the cases uniformly hold that there must be something more than the identity of officers as well as stock ownership in corporate set-ups in order to disregard the corporate fiction. In order to brush it aside it must appear that it was organized for a fraudulent purpose or that some injury has resulted to some one from the transaction, something of fraud, something of illegality or wrongdoing, or something where the moving party has cause for complaint in connection with the transaction. United States v. White Sulphur Springs, Inc., D.C., 57 F.Supp. 48, 52; Randolph Laboratories v. Specialties Development Corporation, D.C., 62 F.Supp. 897, 900; Can-

non Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Mas v. Nu-Grape Co. of America, 4 Cir., 62 F.2d 113.

■ In Hazeltine Corporation v. General Electric Co., D.C., 19 F.Supp. 898 the court reviews in some detail the instances where with a subsidiary being wholly owned and managed by the same officers as of another company, that is where stock ownership and officers are the same, as to when the corporate entity may be disregarded. It would seem from the discussion therein and from a reading of the cases that where, as here, there is no fraud or illegality or wrongdoing done in the transfer, where the transfer is on its face legal, the court should be extremely cautious in disregarding corporate fiction where resort was made by way of acquiring jurisdiction to foreign attachment.

■ In the application of this procedure which compels the owner to put up a bond as in this instance of considerable amount, where its property may be tied up for a long period of time, and where as here the costs of delay run to several thousand dollars a day, that it be incumbent upon the person making resort to the writ that he make certain that the proper owner is singled out. In view of the strong sense of immediacy, the court deems that this matter be disposed of without waiting the full printed record. The filing of the amended libel in no wise changes the result herein reached, as no question of the foreign attachment is involved in this amended procedure.

Accordingly, on this 14th day of February, 1955, It is Ordered by this court that the Writ of Foreign Attachment be, and the same is hereby, dissolved.