**HALL LABORATORIES, Inc.,**

v.

**MILLAR BROS. & CO., Inc. and John Engelhorn & Sons, Inc.**

**Civ. A. 21063.**

United States District Court
E. D. Pennsylvania.
June 26, 1957.

---

Richard P. Brown, Jr., of Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

William L. Matz, of Zoob & Matz, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

This matter comes before the court on the motion of defendant John Engelhorn & Sons, Inc. (hereinafter called "Engelhorn") to dismiss this civil action for patent infringement due to improper venue and service.

Paragraph 2 of the complaint alleges, in part, that "Defendant Engelhorn is a New Jersey corporation and has a regular and established place of business at 35th and Reed Streets, Philadelphia, where both Millar and Engelhorn have

committed acts of infringement." Plaintiff claims to have effected service of process when the United States Marshal delivered a copy of the summons and of the complaint to Leonard Silverstein at 35th and Reed Streets, Philadelphia, Pennsylvania, as an agent or officer of Engelhorn.

■ 28 U.S.C.A. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions. Fourco Glass Co. v. Transmirra Products Corp., 1957, 353 U.S. 222, 77 S.Ct. 787, 788, 1 L.Ed.2d 786. Such section provides as follows:

"(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Since the complaint alleges that Engelhorn committed acts of infringement in this judicial district, the questions here to be determined are:

I. Does Engelhorn have "a regular and established place of business" at 35th and Reed Streets, Philadelphia, Pennsylvania, and

II. Was service on Leonard Silverstein at the above address, as an agent or officer of Engelhorn, service on Engelhorn?

### I. Regular and Established Place of Business

■ Defendant Engelhorn claims that it has no license to do business in Pennsylvania, that it has not transacted any business in Pennsylvania, and that it does not maintain an office or place of business in Pennsylvania, but from the facts as shown by the depositions, exhibits and affidavits, it appears that Engelhorn does have in Pennsylvania a regular and established place of business.

1. Under the Regulations of the United States Department of Agriculture (see document No. 10 in the Clerk's file), pursuant to the Meat-Inspection Act, 21 U.S.C.A. § 77 ff., federal inspection is required of any meat packing establishment that sells its products (which are capable of being used as food for man) in interstate commerce; and each federally-inspected establishment has an official number assigned to it by the Meat Inspection Branch of the Department of Agriculture. This number must be applied to all of the meat products that such establishment ships in interstate commerce so as to inform the public as to where the meat came from and who was the packer. (Deposition of Frank A. Chalcroft, pp. 3 and 4; deposition of Leonard Silverstein, pp. 14 and 15; Regulations Governing the Meat Inspection of the U. S. Department of Agriculture, §§ 2.1 and 5.1(a).)

2. Until March 1956, the meat packing plant at 35th and Reed Streets was a federally-inspected plant operated solely by Millar and was listed with the Meat Inspection Branch as Establishment No. 261 under Millar. (Deposition of Leonard Silverstein, pp. 14–5.)

3. In March of 1956, Engelhorn, by an agreement of stock purchase,[1] took control of the Millar business and thereafter operated the Millar plant at 35th and Reed Streets, Philadelphia, making all decisions relative to its operation. (Deposition of Lexier, pp. 6, 37, 40, 52, 54 and 61; deposition of Chalcroft, p. 7; Exhibit P5 attached to Lexier's deposition.)

1. When plaintiff's counsel requested this agreement, counsel for Engelhorn refused to produce it, stating: "This is a confidential agreement between clients, and it is of no relevance in this proceeding." (See pp. 36 and 37 of deposition of Lexier.) Although there is evidence in the depositions which indicates some doubt as to the terms of this agreement (deposition of Lexier, pp. 7, 42 and 47; deposition of Chalcroft, pp. 10–11), the hearing judge finds that the stock of Millar was held in escrow by Mr. Matz (page 10 of deposition of Chalcroft) pending payment by Engelhorn of the balance of the purchase price, but Engelhorn had control of the operations of Millar until such time as there might be a default by Engelhorn under the terms of the agreement.

4. On March 20, 1956, Mr. Lexier wrote a letter to the Chief of the Meat Inspection Branch of the Department of Agriculture, stating that Engelhorn had acquired Millar and would operate it under its present name as a wholly-owned subsidiary of Engelhorn (P5 attached to Lexier deposition; see deposition of Lexier, p. 15).

On March 21, 1956, Bernard Zitin, then President of Millar, also wrote to the Chief of the Meat Inspection Branch, stating that Millar recently sold its business to Engelhorn and now is a wholly-owned subsidiary of Engelhorn, and requested that its inspection number be transferred to Engelhorn (see Exhibit 3-A attached to Duncan deposition).[2]

5. On March 22, 1956, an application for inspection in the name of Engelhorn, and signed by Mr. Lexier, as Executive Vice President of Engelhorn, was made to the Meat Inspection Branch for meat inspection at the plant at 35th and Reed Streets, Philadelphia. (Exhibit 3C, deposition of Duncan; Exhibit D-1 to deposition of Lexier.) The application listed Millar and two other concerns as subsidiaries of Engelhorn doing business requiring inspection at such plant.

6. By letter of March 27, 1956, to Engelhorn from the Meat Inspection Branch, a new grant of inspection for the establishment at 35th and Reed Streets was issued by the Meat Inspection Branch in the name of Engelhorn, superseding the one previously granted to Millar. Official number 261 was thereto assigned. Such letter also granted inspection under the same number to Millar and two other concerns, as subsidiaries of Engelhorn. (Plaintiff's exhibit 3B attached to Duncan's deposition; Exhibit P-6 attached to deposition of Lexier; pp. 33–5 of deposition of Lexier; p. 6 of Duncan's deposition.)

A publication of the Department of Agriculture, dated April 30, 1956, which is available to the public ("Notice No. 10, Livestock Regulatory Programs"),

noted that Engelhorn and its subsidiaries (Millar being one of them), instead of Millar, now operated in the name of the official establishment No. 261. (Deposition of Duncan, pp. 3 and 4; plaintiff's Exhibit 1 attached to deposition of Duncan.)

7. On two separate occasions, March 20 and March 22 (1956), Mr. Lexier requested permission for Engelhorn to transfer all sausage casings, ham casings and labels from its New Jersey plant to its new Philadelphia plant, and, also, stated its desire to discontinue ham boning operations at Establishment No. 97 in New Jersey and to start its operations in Philadelphia promptly. (Exhibit P–5 attached to deposition of Lexier; Exhibit 3D attached to deposition of Duncan.)

In addition to the Meat Inspection Branch's grant of an official inspection to Engelhorn for the plant at 35th and Reed Streets in Philadelphia on March 27, telegrams from the Meat Inspection Branch to Engelhorn on March 28 and 30 granted permission for Engelhorn to transfer all previously approved labeling material for sausage and ham casings to its Philadelphia plant, Establishment 261, for use at such plant without adjustment, but with coding the labels or packages in a manner acceptable to the inspector in charge which would definitely identify the product as being prepared at Establishment 261 (see Exhibits 3E and 3F attached to deposition of Duncan).

8. Section 17 of the Regulations Governing Meat Inspection requires that labels for products from official establishments must be approved by the Meat Inspection Branch. Application for approval of the various labels for products from Establishment No. 261 have been made in the name of Engelhorn and not Millar (deposition of Lexier, pp. 26–9).

Section 17.2(b) (3) of the Regulations Governing Meat Inspection provides, in part, that: "When product is not pre-

2. It is noted that Mr. Lexier testified that he wrote this letter for Zitin and Zitin signed it. (See pp. 41, 43, 55–7 of deposition of Lexier.)

pared by the person whose name appears on the label, the name shall be qualified by a phrase which reveals the connection such person has with such product, as for example, 'Prepared for * * *.' " In Establishment No. 261, where products are packed under the name of someone other than Millar or Engelhorn, the label bears the qualifying legend "Prepared for and distributed by," but no such qualification appears on products bearing the Engelhorn or Millar name (deposition of Lexier, pp. 32–3).

9. By letter of June 22, 1956, the Chief of the Inspection Procedures, Section II, reported to Engelhorn that on June 15, 1956, the inspector in charge at Philadelphia found a considerable amount of unsound meat at Establishment No. 261 (Exhibit 3G attached to deposition of Duncan). Mr. Lexier replied for Engelhorn by letter of July 16, 1956, denying that unsound meat was being used by Engelhorn in preparing sausage products, and stating that this was the first time in the history of Engelhorn that such a complaint had been directed to Engelhorn. He also said that Engelhorn investigated the matter and instituted procedures which would prevent a reoccurrence of the incident. No statement was made therein that Millar was doing the work for Engelhorn at 35th and Reed Streets. (See Exhibit 3H of deposition of Duncan.)

These facts (1 through 9) substantiate plaintiff's claim that Engelhorn has "a regular and established place of business" at Establishment No. 261 at 35th and Reed Streets, Philadelphia, Pa.

■ Generally, the question of what constitutes the doing of business so as to make the corporation subject to service of process depends upon the facts in each case. The rule can be stated as "that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587. See, also, Remington Rand, Inc., v. Knapp-Monarch Co., D.C.E.D.Pa.1956, 139 F.Supp. 613, 620–621; California Stucco Products of N. E. v. National Gypsum Co., D.C.D.Mass. 1940, 33 F.Supp. 61, 63; Urquhart v. American-La France Foamite Corporation, 1944, 79 U.S.App.D.C. 219, 144 F.2d 542, certiorari denied 1944, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625; Shelton v. Schwartz, 7 Cir., 1942, 131 F.2d 805.

■ Engelhorn's activities also satisfy the test that the defendant's business within the district should be systematic and continuous and not irregular nor casual. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95; Dolly Toy Co. v. Bancroft-Rellim Corp., D.C.S.D. N.Y.1951, 97 F.Supp. 531, 535–536, and cases there cited. See, also, Ronson Art Metal Works v. Brown & Bigelow, Inc., D.C.S.D.N.Y.1952, 104 F.Supp. 716, 724, where activity held to amount to "doing business" under 28 U.S.C.A. § 1391(c), the general venue statute, was sufficient to support "a regular and established place of business" under 28 U.S.C.A. § 1400(b), the special venue statute in patent infringement suits.[3]

3. This motion may also be viewed in terms of Engelhorn waiving its immunity from service of process in this judicial district. In Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167, the court said that venue is a privilege which may be lost in various ways: "It may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct. * * *

Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference." See, also, Gaffney v. Unit Crane & Shovel Corp., D.C.E.D.Pa.1953, 117 F. Supp. 490–491; Buffum v. Chase Nat. Bank of City of New York, 7 Cir., 1951, 192 F.2d 58, 61.

By the course of conduct here adhered to by defendant Engelhorn in its letters

■ Defendant Engelhorn contends that the above-mentioned letters, applications, etc., were a mistake beginning with a stenographic error in the preparation of the application for an official establishment number (Exhibit 3C of deposition of Duncan and D1 of deposition of Lexier). Such an assertion, if true, does not explain many of Engelhorn's other letters and the representations contained therein, including its admission that it was responsible for any unsound meat at 35th and Reed Streets (see page 801 of 152 F.Supp. above). Also, the fact that Engelhorn has made no effort to inform the Meat Inspection Branch of the U. S. Department of Agriculture of the alleged error in its application for inspection and its continuing representations to the Meat Inspection Branch that it is doing business at Establishment No. 261 (see pp. 50–1 of deposition of Lexier)[4] operate as a waiver of its right to raise such contentions.

■ "(Waiver) is a doctrine, resting upon an equitable principle, which courts of law will recognize, that a person, with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another; a rule of judicial policy, the legal outgrowth of judicial abhorrence, so to speak, of a person's taking inconsistent positions and gaining advantages thereby through the aid of courts." (Matter in parentheses added.) 92 C.J.S. p. 1050. See, also, 67 C.J. 311. In Kistler v. Gingles, D.C.W. D.Ark.1950, 88 F.Supp. 9, 17–18, the court noted that "it is not fatal to the application of waiver and estoppel in this case that plaintiffs did not have actual

knowledge of the falsity of the statement at the time the affidavit was filed." The court continued by noting that plaintiffs obtained this knowledge later and that plaintiffs engaged in conduct "in a manner inconsistent with the right to hold defendants * * * liable * * *." See, also, Zeth v. Pennsylvania R. Co., D.C. E.D.Pa.1947, 7 F.R.D. 612, 614, and Miravalle Supply Co. v. El Campo Rice Milling Co., 8 Cir., 1950, 181 F.2d 679, 685.

## II. Service of Process

■ Since the infringer has a "regular and established place of business" in this district, service which is made upon the agent or employee who is in charge of such "regular and established place of business" is good. Defendant relies on F.R.Civ.P. 4(d) (3), 28 U.S.C.A., requiring that service of process be made on "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *." But it is sufficient if the man in charge of such place of business is served. See Shelton v. Schwartz, supra, 131 F.2d at page 808. See, also, Moore's Federal Practice, 2nd Ed., § 4.22. In Noerr Motor Freight, Inc., v. Eastern R. R. Presidents Conference, D.C.E.D.Pa.1953, 113 F.Supp. 737, 749, the court found that service on one who "said that he was in charge of the office" but who, in fact, was not the " 'ranking' employee" was good service. The court noted that "In any event, it is sufficient that a responsible person, who declared himself to be in charge of the office, was served." See, also, Bergold v. Commercial Nat. Underwriters, D.C.Kan.1945, 61 F.Supp. 639, 645.

and application to the Meat Inspection Branch of the U. S. Department of Agriculture and its failure to this date to correct the alleged erroneous application and the representations to the Meat Inspection Branch, it appears that an implied waiver of immunity to service of process has occurred. But see Ruth v. Eagle-Picher Company, 10 Cir., 1955, 225 F. 2d 572, 577, and Barber-Greene Company v. Blaw-Knox Company, 6 Cir., 1957, 239 F.2d 774, 777.

4. Information received from the Meat Inspection Branch of the United States Department of Agriculture as recently as June 24, 1957, disclosed that there had been no effort made by Engelhorn to correct what their representatives claim to be a mistake and to remove the registration of their company as doing business at 35th and Reed Streets, Philadelphia, Pa.

Service of process was here made by the Marshal upon Leonard Silverstein, as General Manager[5] in charge of the plant located at 35th and Reed Streets, Philadelphia, when he was in such position at a "regular and established place of business" of Engelhorn. Such service was, therefore, clearly sufficient. Especially is this so where the officers of Engelhorn were not consistently present at the Philadelphia plant (pp. 18 and 19, deposition of Silverstein).

Order

And now, June 26, 1957, it is ordered that the motion of defendant John Engelhorn & Sons, Inc. to dismiss for lack of jurisdiction, under Rule 12(b), is denied.

5. The return on Service of Writ by the Deputy United States Marshal certified that service was made upon Leonard Silverstein, Vice President and General Manager for Millar and Engelhorn. But Mr. Silverstein executed an affidavit (Exhibit A attached to Engelhorn's motion to dismiss) which stated that he was general manager of Millar, that he was not an agent or officer of Engelhorn, and that he was not authorized to accept service for Engelhorn. He did not deny that he was in charge of the plant at 35th and Reed Streets.