**TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics Incorporated**

v.

**EPSCO, INCORPORATED and Monitor Systems, Inc.**

Civ. A. No. 32693.

United States District Court
E. D. Pennsylvania.
Dec. 20, 1963.

Harold Berger, Berger & Stein, Philadelphia, Pa., Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., for plaintiffs; M. Victor Leventritt, New York City, of counsel.

James J. McCabe, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for defendants; Weingarten, Orenbuch & Pandiscio, Boston, Mass., of counsel.

LUONGO, District Judge.

Plaintiffs instituted this action against Epsco, Incorporated (Epsco) and Monitor Systems, Inc. (Monitor) for patent infringement. Defendant Monitor was served in this district and has raised no question of venue or of this court's jurisdiction. Service on Epsco was attempted in two fashions: (a) upon a vice-president of Monitor,[1] and (b) through the Secretary of the Commonwealth of Pennsylvania.[2] Epsco has moved to dismiss the action against it for improper venue and to quash service of process. Those motions are now before me. The parties have been given full opportunity to supplement the record on the jurisdictional questions raised by Epsco's motions and they have done so by affidavits, depositions and exhibits. From the record so made, I make the following

## FINDINGS OF FACT

1. Epsco is a Massachusetts corporation which has its principal office and plant at Cambridge, Massachusetts.

2. Epsco owns all of the stock of Monitor, a Delaware corporation which has its principal office and plant in the Eastern District of Pennsylvania.

3. John Beedle is president of Epsco and chairman of Epsco's board of directors which consists of seven members.

4. John Beedle is also chairman of Monitor's board of directors which normally consists of three members. There presently exists one vacancy on Monitor's board.

---

1. 28 U.S.C.A. § 1694:
"In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business."

2. 15 Purdon's Pa.Stat. § 2852–1011:
"* * * * *
"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. * * *"
Note: This provision has been amended since the service here attempted. In view of the disposition of this case, the amendment is immaterial.

5. The executive officers of Monitor consist of its president, three vice-presidents, a treasurer and a secretary.

6. George Hoberg is president of Monitor and is a member of its board of directors. Hoberg holds no executive office in Epsco nor is he a member of Epsco's board. None of Monitor's vice-presidents holds any office in Epsco. Monitor's treasurer and secretary, respectively, hold the corresponding offices in Epsco and are paid only by Epsco. Monitor pays no part of the salaries of either the treasurer or secretary.

7. Separate minutes are maintained for meetings of the board of directors of each corporation. No joint meeting of the boards of the two corporations has ever been held.

8. The meetings of Monitor's board of directors are held in Epsco's offices in Massachusetts.

9. At several meetings of Epsco's board of directors, Monitor's general economic condition, retirement and replacement of its officers, and the subleasing of part of its premises have been discussed. Monitor's president has appeared at one of Epsco's board meetings and reported on Monitor's activities.

10. Monitor's affairs are managed by its president and vice-presidents, subject to control as to matters of policy by Mr. Beedle who is the chairman of Monitor's board as well as president and chairman of the board of Epsco.

11. Monitor files separate state tax returns and has filed separate federal income tax returns except for one year when a consolidated federal income tax return was filed with Epsco.

12. Monitor prepares a separate financial report of its affairs. That report is not made public but is submitted to its parent, Epsco.

13. Monitor has its own separate management office in the Eastern District of Pennsylvania from which it conducts its business affairs and where it maintains its records, including those relating to its personnel.

14. Monitor leases, in its own name, the premises which it occupies at Fort Washington Industrial Park in the Eastern District of Pennsylvania. Epsco guarantees Monitor's obligations under that lease.

15. Monitor maintains its own bank account in this district. Epsco advances money required in the operation of Monitor's business, placing sums so required in Monitor's account. Monitor's receipts from its business are not deposited in Monitor's account but are transmitted to Epsco and applied in repayment of sums advanced by Epsco. Epsco makes an interest charge for the unpaid balances of the money advanced to Monitor.

16. Monitor's employees are paid by checks drawn on Monitor's account. The checks are validated by the signature of Lawrence Coty, Controller of Monitor who holds no office in Epsco. The checks are prepared by Epsco on its accounting machines as an accommodation and convenience to Monitor.

17. Epsco manufactures, among other things, printed circuit boards for its own use and for sale to others, and electronic systems employing such boards. The circuit boards are manufactured solely in Epsco's plant in Massachusetts.

18. Monitor also designs and manufactures electronic systems employing printed circuit boards, but does not manufacture the boards themselves.

19. In 1959, Monitor purchased nearly all of its required printed circuit boards from Epsco, but since then has purchased the vast majority from manufacturers other than Epsco. Monitor's selection of the supplier of printed circuit boards is determined on the basis of price, quality and satisfactory delivery.

20. Neither Epsco nor Monitor solicits sales for the other.

21. When there is a possibility that both corporations may bid for the same electronic systems contract, Beedle decides which of the two will submit a bid.

22. Monitor is a corporation separate and distinct from Epsco. Monitor is not the *alter ego* of Epsco.

23. Epsco does not, either itself or through Monitor, maintain a regular and established place of business in the Eastern District of Pennsylvania.

24. This action against Epsco does not arise out of acts or omissions of Epsco within the Commonwealth of Pennsylvania.

25. Alleged acts of infringement by Monitor within the Eastern District of Pennsylvania are not the acts of Epsco.

### CONCLUSIONS OF LAW

1. Service of process has not been properly made upon defendant Epsco, Incorporated.

2. Venue is improperly laid in the Eastern District of Pennsylvania for this patent infringement action against Epsco, Incorporated under the provisions of 28 U.S.C.A. § 1400(b).

### DISCUSSION

■ Jurisdiction of this patent infringement action is founded on 28 U.S.C.A. § 1338(a).[3] Venue is governed by 28 U.S.C.A. § 1400(b) which provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where defendant has committed acts of infringement and has a regular and established place of business."

This venue provision is exclusive in actions of patent infringement and is not supplemented by the general venue provision of 28 U.S.C.A. § 1391(c). Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); Ackerman v. Hook, 183 F.2d 11 (3rd Cir. 1950).

■ Epsco is a resident of the state of its incorporation, Massachusetts, and clearly does not reside in this district.

Consequently, venue is proper here only if Epsco "has committed acts of infringement and had a regular and established place of business" here. Ackerman v. Hook, supra; Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co., 204 F.Supp. 4 (S.D.N.Y.1962).

Plaintiffs do not contend that Epsco, as a legal entity separate from Monitor, meets those requirements, rather, they contend that Monitor, Epsco's wholly-owned subsidiary, is its pawn and *alter ego*; that Monitor has committed acts of infringement within this district and its acts are those of Epsco; and that Monitor's place of business, for the purpose of § 1400(b), is a regular and established place of business of Epsco.

Whether either the service upon the vice-president of Monitor under 28 U.S. C.A. § 1694 or the service through the Secretary of the Commonwealth under 15 Purdon's Pa. Stat. § 2852–1011, subd. B, as permitted in an action "arising out of acts or omissions of [a foreign unregistered corporation] within this Commonwealth," constituted effective service on Epsco, and whether there is proper venue under § 1400(b) are all dependent upon Monitor's alleged *alter ego* status and a determination of that issue will resolve defendant Epsco's several motions.

■■ The normal rule is that separate corporations will not be regarded as a single entity so as to hold one responsible for the acts or obligations of the other even where one has practical control over the other through stock ownership. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 31 F.2d 265 (2nd Cir. 1929); Owl Fumigating Corp. v. California Cyanide Co., 30 F.2d 812 (3rd Cir. 1929). A corporation may, however, become so involved and intertwined in or so control

---

3. "The district courts shall have original jurisdiction of any civil action [or proceeding] arising under any Act of Congress relating to patents, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases." 28 U.S.C.A. § 1338(a).

the activities of another as to compel disregard of the technical separate existence and hold the one legally accountable for what the other does. Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commercial Ass'n, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229 (1918); Aileen Mills Co. v. Ojay Mills, Inc., 192 F.Supp. 131 (S.D.N.Y.1960); Hall Laboratories, Inc. v. Millar Bros. & Co., 152 F.Supp. 797 (E.D.Pa.1957); Gray v. Eastman Kodak Co., 53 F.2d 864 (E.D.Pa.1930).

■ There is not present in the instant case the immediate and direct intervention in the subsidiary's affairs and transactions, "ignoring the subsidiary's paraphernalia of incorporation, directors and officers" suggested in Kingston Dry Dock Co. v. Lake Champlain Transp. Co., supra, 31 F.2d at 267, to be sufficient to fuse parent and subsidiary; nor is there the complete identity of officers and the exercise of total control by parent over subsidiary's operations held to subject *subsidiary* to suit where *parent* was located as in Aileen Mills v. Ojay Mills, Inc., supra; nor the complete emasculation of the powers of subsidiary's board of directors as in Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commercial Ass'n, supra; nor does Epsco actively maintain Monitor's office or place of business, as in Gray v. Eastman Kodak Co., supra; nor does it operate Monitor's business as its own as was the case in Hall Laboratories, Inc. v. Millar Bros. & Co., supra; nor, despite the hint of it at oral argument by counsel for plaintiffs, is there any evidence that Monitor was organized for fraudulent or illegal purposes in connection with the subject matter of the suit, warranting piercing the corporate veil, as in American Anthracite & Bituminous Coal Corp. v. Amerocean S. S. Co., 131 F.Supp. 244 (E.D.Pa.1955); see Owl Fumigating Corp. v. California Cyanide Co., 24 F.2d 718 (D.Del.1928), affirmed 30 F.2d 812 (3rd Cir. 1929); Acme Card System Co. v. Remington Rand Business Service, 21 F.Supp. 742 (D.Md.1938); Hazeltine Corp. v. General Electric Co., 19 F.Supp. 898 (D.Md.1937).

There is unquestionably an interrelationship between Epsco and Monitor, and there is clearly an exercise by the parent of a measure of control over the subsidiary but neither exists to any greater degree than was present, and yet held to be a proper exercise of control normally incident to stock ownership, in Cannon Mfg. Co. v. Cudahy Packing Co., supra (parent dominated subsidiary "immediately and completely" through stock ownership and exerted commercial and financial control through the same persons who controlled branches of parent which were not separately incorporated); Owl Fumigating Corp. v. California Cyanide Co., supra (parent, a holding company whose only asset was its subsidiary operating company, had substantially the same officers and directors as subsidiary, extended substantial financial assistance to subsidiary, had close relationship and "in a measure directed and controlled" the subsidiary); and Hazeltine Corp. v. General Electric Co., supra (parent's officers comprised a majority of subsidiary's board of directors, subsidiary's executive officers were former employees of parent, subsidiary's offices were maintained in parent's general plant and parent and subsidiary shared costs of advertising).

■ It was plaintiffs' burden to establish the jurisdictional facts necessary to maintain suit against Epsco in this district. Phillips v. Baker, 121 F.2d 752 (9th Cir. 1941), cert denied, 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551 (1941). To do so it was incumbent on them to show that Monitor was a mere shadow with no substance other than Epsco's. They failed to carry that burden. In § 1400(b) Congress has manifested the intention that, for purposes of convenience and practicality, patent infringement actions be brought where the defendant resides or where it has a regular and established place of business and has committed acts of infringement. Ruth v. Eagle-Picher Co., 225 F.2d 572 (10th Cir. 1955); American Chemical Paint Co. v. Dow Chemical Co., 161 F.2d 956, petition for rehearing overruled, 164

F.2d 208, (6th Cir. 1947); Bradford Novelty Co. v. Manheim, 156 F.Supp. 489 (S.D.N.Y.1957). That congressional intent would be thwarted if separate corporations were treated as one for the sole purpose of bringing into a district, to defend a patent infringement suit, a corporation whose records, operations, offices and employees are located elsewhere.

Epsco's motions to quash the return of service and to dismiss the action as to it for improper venue will be granted.