**Frederic A. LANG and Joan Goodrich Lang, his wife et al.**

v.

**COLONIAL PIPELINE COMPANY.**

Civ. A. No. 40823.

United States District Court
E. D. Pennsylvania.

April 5, 1967.

David F. Binder, Philadelphia, Pa., for plaintiffs.

Peter Platten, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Jack Vickrey, Howard D. McCloud, Atlanta, Ga., for defendant.

## OPINION

JOHN MORGAN DAVIS, District Judge.

The plaintiffs, all citizens of Pennsylvania, have brought this action against the defendant corporation which was incorporated in Delaware and has its principal place of business in a state other than Pennsylvania. They seek to eject the defendant from their land in Chester County, Pennsylvania and to obtain damages for trespass. In the present posture of the case, there is jurisdiction based on diversity of citizenship although the plaintiffs state that their action arises under the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

The defendant moves to dismiss the complaint under Rule 12(b) (7) because of the plaintiffs' failure to join Colonial Pipeline Company of Pennsylvania, as a party. It is not disputed that its joinder would oust the court of diversity jurisdiction.

It will be helpful to recite further the salient allegations made in the complaint. The defendant, wholly owned by nine large oil companies, entered upon the plaintiff's land without their permission or consent and constructed a 30 inch diameter petroleum pipeline in and under it. The pipeline does not comply with certain state safety requirements and was generally built and implanted in a manner highly dangerous to life and property. Moreover, the construction and operation of the pipeline involves no public use or necessity, is part of a "private financial enterprise for * * *

private financial benefit," and "constitute[s] the unlawful and unjustified taking of private property for private use." The complaint states that the defendant's conduct violates the Fifth and Fourteenth Amendments to the United States Constitution as well as Article 16 § 8 of the Pennsylvania Constitution P.S. and the state safety requirements contained in Pa.Stat.Ann. tit. 35 § 1301 et seq.

## I.

The threshold question before us is whether Colonial of Pennsylvania should be joined either as an indispensable party or as a party needed for a full and just adjudication under the recently amended Rule 19(b) of the Federal Rules of Civil Procedure.

Colonial Pipeline Company of Pennsylvania ("Colonial of Pennsylvania") is a wholly owned subsidiary of the defendant ("Colonial of Delaware".) The records of the Pennsylvania Public Utility Commission indicate that the former was "organized for the purpose of the transportation and storage or distribution of oil or any petroleum product by means of pipelines, pumps and tanks or other equipment and appurtenances, for the public," in 1962. The Commission specifically authorized Colonial of Pennsylvania to acquire by eminent domain, if necessary, land and/or easements for the interstate pipeline which was to be built and operated by its parent, Colonial of Delaware. Colonial of Pennsylvania holds the title to the interest in plaintiffs' land, while Colonial of Delaware advances the money to pay for the realty, makes the improvements, provides the necessary personnel, and generally runs the pipeline business.

It goes without saying that any action to eject the parent from the land would have a definite adverse effect on its subsidiary. The latter's estate in the land as well as its corporate existence is inextricably tied to the operation of the pipeline. If Colonial of Delaware is removed there is little doubt that the easement will be virtually worthless since it was originally condemned simply to facilitate the transportation of petroleum. We have no trouble in finding that Colonial of Pennsylvania is an indispensable party, for any adjudication of the present controversy in its absence would significantly affect its interests and would not be consistent with equity and good conscience. Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1884); Provident Tradesmen's Bank and Trust Co. v. Lumbermen's Mutual Casualty Co., 365 F.2d 802, 804–809 (3d Cir. 1966); McShan v. Sherrill, 283 F.2d 462 (9th Cir. 1960); State of Washington v. United States, 87 F.2d 421 (9th Cir. 1963); Amerada Petroleum Corp. v. Rio Oil Co., 225 F.Supp. 907, 910 (D.Wyo.1964). The fact that it is a wholly owned subsidiary of a party already before the court does not negate its indispensability. Baltimore & Ohio R. Co. v. City of Parkersburg, 268 U.S. 35, 45 S.Ct. 382, 69 L.Ed. 834 (1925); Minnis v. Southern Pacific Co., 98 F.2d 913 (9th Cir. 1938); Charles Keeshin, Inc. v. Farmers & Merchants Bank, 199 F.Supp. 478 (N.D.Ark.1961).

Insofar as the matter here is one of procedure under Rule 19(b) and not one of substantive law, we conclude that we should not proceed without Colonial of Pennsylvania. Taking into consideration the pragmatic factors enunciated in that Rule, we find that any judgment rendered would be prejudicial to Colonial of Pennsylvania in its absence; that the prejudice could not be avoided by any shaping of the relief; that any judgment rendered in its absence would be inadequate; and that the plaintiff would have an adequate remedy in the state courts since both companies are amenable to service of process there. See Provident Tradesmen's Bank and Trust Co. v. Lumbermen's Mutual Casualty Co., supra (compare majority and dissenting opinions).

## II.

We must now determine whether or not we have federal question jurisdiction, for otherwise we will have to dis-

miss the action due to a lack of diversity of citizenship.

■■ Preliminarily, we must reject the notion that jurisdiction may be predicated on the Fifth Amendment. This amendment applies only to action or conduct by the federal government, and none is alleged here. E. g. Spiesel v. City of New York, 239 F.Supp. 106, 107 (S.D. N.Y.1964), aff'd 342 F.2d 800 (2d Cir. 1965); Trauss v. City of Philadelphia, 159 F.Supp. 672 (E.D.Pa.1958).

■ We now come to the question of whether we have an action arising under the Due Process Clause of the Fourteenth Amendment. This provision applies to acts under color of state law and not to purely private conduct. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). E. g. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

■■ The plaintiffs have not alleged anywhere in their complaint that state action of any kind is involved in depriving them of their property. It states only that a corporation has taken private property for private use. It never indicates that the defendant was acting improperly under any eminent domain power. The suit is unlike many cases where the plaintiffs seek to enjoin the state or someone under its authority from taking private property for private use under a statute or ordinance allegedly in violation of the Due Process Clause of the Fourteenth Amendment. E. g. City of Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950 (1930); Rindge Company v. County of Los Angeles, 262 U.S. 700, 705, 43 S.Ct. 689, 67 L.Ed. 1186 (1923); Sears v. City of Akron, 246 U.S. 242, 251, 38 S.Ct. 245, 62 L.Ed. 688 (1918); Hairston v. Danville and Western Railway Company, 208 U.S. 598, 606, 28 S.Ct. 331, 52 L.Ed. 637 (1908); Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 158, 161, 17 S.Ct. 56, 41 L.Ed. 369 (1896). From all that appears in the pleadings in this case, the defendant could have taken the property by adverse possession which is nothing more than a person taking someone else's private property for his own private use. Farmer v. Philadelphia Electric Co., 215 F.Supp. 729 (E.D.Pa. 1963), aff'd 329 F.2d 3 (3d Cir. 1964); See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Such facts hardly give rise to a case arising under the Constitution.

■ We have here a common law suit for ejectment and damages for trespass with nothing in the complaint to indicate a constitutional question except the bare allegation of a violation of the Due Process Clause of the Fourteenth Amendment. This is obviously not sufficient to confer jurisdiction on this court.

■ Even if we assume that the defendant was acting under color of state authority through the exercise of the eminent domain power, we must determine whether the allegation of a violation of the Fourteenth Amendment is sufficient to give us jurisdiction under the circumstances here. It is well settled that an action does not arise under the Constitution within the meaning of 28 U.S.C. § 1331 if the federal question enters the picture only by way of a defense or in anticipation of a defense that the plaintiff expects the defendant to make. It must be an integral part of the statement of the plaintiff's claim for relief in order for this court to have jurisdiction.

In Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), the plaintiffs brought an action against the defendant railroad to require specific performance of a contract for free lifetime passes which plaintiffs had received in settlement of a damage claim. Besides stating their claim for breach of contract, the plaintiffs alleged that the act of Congress proscribing the use of free passes on which the defendant would rely was unconstitutional. With no diversity existing, the Supreme Court dismissed the action because of a lack of federal question jurisdiction since the constitutional

issue did not arise by way of the plaintiffs' claim but rather in anticipation of a defense. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913); Devine v. City of Los Angeles, 202 U.S. 313, 26 S.Ct. 652, 50 L.Ed. 1046 (1906).

In the important case of Gully v. First National Bank in Meridan, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936), Mr. Justice Cardozo stated:

"* * * a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * * A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * * and the controversy must be disclosed upon the face of the complaint unaided by the answer * * *. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense."

The Supreme Court has also discussed this principle with specific reference to ejectment. In Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914), the Court stated that all that was necessary to state a good cause of action for ejectment was a statement that the plaintiffs were the owners in fee and were entitled to possession; that the defendants had taken possession forcibly and remained there wrongfully; that they were keeping the plaintiffs out of possession; and that the plaintiffs had suffered damages. The Court refused to predicate federal question jurisdiction on the plaintiff's additional statements that the defendants were asserting their claim under a deed which was void under an Act of Congress. The Court said that such statements were in anticipation of a defense and unnecessary to state a good cause of action.

In White et al. v. Sparkill Realty Corporation et al., 280 U.S. 500, 50 S.Ct. 186, 74 L.Ed. 578 (1930), the plaintiffs had brought a suit in equity in federal court against certain state officials for appropriating his land for a state park on the ground that their acts and the statutes under which they operated were invalid under the Fourteenth Amendment. They sought to have the state removed from their land. After deciding that the matter was not one in equity but rather a common law action in ejectment, the court held that an orderly statement of the plaintiffs' claim would not involve a constitutional question, the latter arising only in anticipation of possible defenses. The court dismissed the action for lack of jurisdiction.

 The instant action is one in ejectment. The Supreme Court has mandated that its essential elements are the plaintiffs' allegations of their ownership and right to possession, the defendant's wrongful possession, and the request for relief. The plaintiffs here have gone further in claiming that the defendant's conduct violates the Constitution. Even if we fill in certain gaps in the complaint and assume state action, such an allegation is in anticipation of Colonial's defense that they have constructed and are operating the pipeline on plaintiffs' property pursuant to eminent domain power granted to it by the Commonwealth of Pennsylvania. White et al. v. Sparkill Realty Corporation et al., supra; Taylor v. Anderson, supra. It is unnecessary to a proper statement of plaintiff's claim. Consequently, we have no federal question jurisdiction here since the constitutional element arises only by way of defense.

Professor Moore supports this view in his treatise. He states that an ejectment action such as we have here will seldom if ever be within 28 U.S.C. § 1331 unless one of the parties is a federal corporation, because a proper statement of the plaintiff's claim does not

involve a constitutional issue. Moore, Federal Practice ¶ 0.60[8.–3].

The plaintiff's reliance on Lancaster v. Kathleen Oil Company, 241 U.S. 551, 36 S.Ct. 711, 60 L.Ed. 1161 (1916) is misplaced. In this case, the plaintiff claimed that the defendant's oil and gas mining lease was void and that it was entitled to possession because of a prior lease. The court distinguished it from *Taylor,* supra, on the ground that it was not only an action in ejectment but also an action for a perpetual injunction to restrain defendant from asserting any rights under its lease. Such relief involved the interpretation of certain acts of Congress and the authority of the Secretary of the Interior to grant approval of the defendant's lease.

### III.

Finally, the plaintiffs ask us to pierce the corporate veil by disregarding the separate existence of Colonial of Pennsylvania. They argue that it is merely a "dummy subsidiary" or "alter ego" of the present defendant. Without Colonial of Pennsylvania as a recognized party, this court would have power to adjudicate the controversy because complete diversity would still exist. See Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

While the plaintiffs have cited no cases to us and our research has disclosed none where the courts have overlooked the separate identity of a wholly owned subsidiary in order to avoid being ousted of its diversity jurisdiction where that party is indispensable or needed for a full and just adjudication of the controversy, the Supreme Court has on several occasions considered the issue of the creation of a corporation specifically for the purpose of creating diversity. In Miller & Lux, Inc. v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908), the stockholders of a California corporation created a Nevada corporation and transferred its property to the latter without dissolving the former. The

California concern owned the Nevada corporation completely and had full control over its operations. The subsidiary then sued another California corporation in the federal court in that state on the basis of diversity of citizenship. The Court found that the creation of the Nevada corporation was a mere sham for the sole purpose of creating federal jurisdiction and that its corporate creator could have compelled it to dismiss the suit and reconvey the property. While the mere acquisition of citizenship in a state to create diversity was not sufficient to defeat jurisdiction, it held that jurisdiction did not exist here because "the Nevada corporation was organized and collusively made plaintiff in the suit in the Federal court simply for the purpose of creating a case cognizable by that court." Miller & Lux, Inc. v. East Side Canal & Irrigation Co., supra at 306, 29 S.Ct. at 115. See also Southern Realty Investment Co. v. Walker, 211 U.S. 603, 29 S.Ct. 211, 53 L.Ed. 346 (1909); Lehigh Mining & Manufacturing Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895).

The Supreme Court has also held that the mere dissolution of a corporation and its incorporation in another state to create diversity of citizenship will not oust the federal courts of jurisdiction. Black and White Taxicab and Transfer Co. v. Brown and Yellow Taxicab and Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928). There the Court stated, "The motives which induced the creation of respondent to become successor to its Kentucky grantor and take a transfer of its property have no influence on the validity of the transactions which are the subject of the suit. The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction." Black and White Taxicab and Transfer Co. v. Brown and Yellow Taxicab and Transfer Co., supra at 524, 48 S.Ct. at 405.

In these cases, the Supreme Court has not seen the issue as one of piercing the corporate veil but rather as one of a col-

lusively made party under the federal statute which specifically proscribes this court's jurisdiction under such circumstances. See 28 U.S.C. § 1359.[1]

In the instant action, we do not have the situation where a party is attempting to come into federal court through manipulation of corporate identity. The plaintiffs want us to disregard a corporation so that we may be able to adjudicate the controversy. There is no statute analogous to 28 U.S.C. § 1359 which requires us to retain jurisdiction where a party creates a corporation "collusively or improperly" so as to avoid the federal courts. In fact, on several occasions, the Supreme Court has held that the calculated action of a party to avoid the federal court will not give us jurisdiction where it would otherwise exist. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1930); Provident Savings Life Assurance Society v. Ford, 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261 (1885).

■■■ The Congress has also expressly narrowed our diversity power by providing that a corporation shall be deemed a citizen not only of its state of incorporation but also of the state where its principal place of business is located. 28 U.S.C. § 1332(c); Lawson v. United House of Prayer, 252 F.Supp. 52 (E.D. Pa.1966). If a corporation happens to be incorporated in more than one state, it is a citizen of each, thus further restricting the number of federal courts in which suit can be instituted on the basis of diversity. Lawson v. United House of Prayer, supra; Stroup v. Pittsburgh & Lake Erie R. Co., 186 F.Supp. 154 (N.D.Ohio 1960); Moore, Federal Practice ¶ 0.78[2]; 1 Barron & Holtzoff, Federal Practice & Procedure § 26 fns. 93.1–93.4.

■■■ Even assuming without deciding that we could disregard the corporate existence of a subsidiary completely controlled by a parent corporation so that we might obtain jurisdiction of the controversy, we shall not do so under the circumstances of this case in light of Congressional policy and the decisions of the Supreme Court. Moreover, there is no suggestion that the parent is using the subsidiary to shield or perpetrate fraud or wrongdoing.[2] See Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 7 A.L.R.3d 1332 (7th Cir. 1963); Whayne v. Transportation Management Service, Inc., 252 F.Supp. 573 (E.D.Pa.1966); American Anthracite & Bituminous Coal Corp., 131 F.Supp. 244 (E.D.Pa.1955); 1 Fletcher, Cyclopedia Corporation §§ 41–41.3.

The cases cited by the plaintiff are inapposite. Cahokia Sportservice, Inc., v. Cahokia Downs, Inc. 165 F.Supp. 686 (E.D.Ill.1958), was an action by an Illinois corporation for a declaratory judgment to construe a lease. The defendant, a Delaware Corporation, contended that diversity was lacking because its wholly owned subsidiary, an Illinois corporation, was the real party in interest. The court found that the assignment of the lease to the subsidiary was not complete and that the defendant was still the real party in interest. It did not disregard the separate corporate existence of the subsidiary.

Chicago, M. & St. P. Ry. v. Minneapolis Civil and Commerce Ass'n, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229 (1918), cited by the plaintiffs, dealt with the decision of the Minnesota Railroad and Warehouse Commission involving rate discrimination by two railroads through their wholly owned subsidiary which had title to certain property. The court did not disregard the subsidiary as a party or separate entity. It simply affirmed

---

1. The statute reads: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

2. One reason given at the argument for the separate existence of Colonial of Pennsylvania was the fact that Pennsylvania law does not explicitly confer on a foreign pipeline corporation the right of eminent domain. See Pa.Stat.Ann. tit. 15 § 2153; Pa.Stat.Ann. tit. 15 § 2167.

the Minnesota court's decision that the subsidiary should not be recognized as an independent common carrier for rate making purposes. It had nothing to do with the question of whether the subsidiary should be ignored for jurisdictional purposes.

Colonial of Pennsylvania is an indispensable party, and this litigation cannot be fully and justly adjudicated under Rule 19 without its joinder. Since jurisdiction cannot be predicated on a federal question, the joinder of Colonial of Pennsylvania will destroy diversity of citizenship. We must therefore dismiss the complaint under Rule 12(b) (7).